IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BASIL CROOKSHANKS, et al.,

          Plaintiffs,

v.                                CIVIL ACTION NO.   2:16-cv-03508

HEALTHPORT TECHNOLOGIES, LLC, et al.,

          Defendants.

MEMORANDUM OPINION & ORDER

Pending before the court is the plaintiffs' Motion for Remand [ECF No. 6]. For the reasons stated below, the Motion is **GRANTED**.

## I.    Background

This matter arises from the plaintiffs' Amended Class Action Complaint ("Complaint") filed in the Circuit Court of Kanawha County, West Virginia, on March 14, 2016. Basil Crookshanks, representing himself and others similarly situated, brought this action against Charleston Area Medical Center, Inc. ("CAMC") and HealthPort Technologies, LLC ("HealthPort"). CAMC is a domestic corporation with its principle place of business in Kanawha County, West Virginia. HealthPort is a foreign corporation with its principle place of business in Georgia. HealthPort conducts business throughout West Virginia. Crookshanks is a resident of Greenbrier County, West Virginia. Am. Compl. ¶¶ 1–3 [ECF No. 1-2].

In 2015, Crookshanks was a patient at a CAMC facility. Am. Compl. ¶ 19. Subsequently, Crookshanks sent a letter to CAMC requesting copies of his medical records and medical bills. *Id.* ¶ 20. HealthPort, acting as CAMC's medical records manager, responded by demanding $4,463.43 in payment for the records based on a $0.55 per page fee applied to Crookshanks's 7,518 pages of records. *Id.* ¶ 21. Crookshanks argues that HealthPort's $0.55 per page fee, which he alleges HealthPort charges each time a patient requests his or her medical records, is not a "reasonable, cost-based fee," as required by section 16-29-2 of the West Virginia Code. *Id.* ¶ 24–25.

The membership of the putative class is defined as any person who (1) requested copies of his or her medical records from any health care provider in West Virginia at any time between June 6, 2014, until the case is resolved; (2) had his or her request handled by HealthPort; and (3) paid the fees charged by CAMC or HealthPort.[1] Am. Compl. ¶ 6.

The counts listed in the Complaint are as follows: (1) violation of statute, (2) violation of public policy, (3) breach of implied contract, (4) violation of the West Virginia Consumer Credit and Protection Act, (5) fraud, and (6) declaratory judgment. The relief sought includes unspecified compensatory damages, punitive damages, costs and attorneys' fees, pre-judgment and post-judgment interest, and declaratory relief. Am. Compl. ¶ 55(A)–(E).

---

[1] The class definition explicitly includes patient representatives requesting medical records on another's behalf.

2

## II.   Notice of Removal

On April 8, 2016, the defendants timely filed their Notice of Removal [ECF No. 1] in the United States District Court for the Southern District of West Virginia. The defendants allege that removal is proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Specifically, the defendants allege that (1) 100 or more members comprise the putative class, (2) at lease some members of the putative class have a different citizenship from at least one of the defendants, and (3) the relief sought on behalf of the putative class exceeds the sum or value of $5,000,000 in the aggregate. Notice of Removal ¶ 12 (citing 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B)).

## III.   Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In order to remove a state action to a district court, the defendants must file a "notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

A defendant's notice of removal is not required to meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) ("[J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that

3

the parties are of diverse citizenship and that '[t]he matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332' . . . so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner." (citation omitted). "Of course, on a challenge of jurisdictional allegations, '[t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper.'" *Id.* (quoting *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006)). When jurisdiction is challenged, the removing party must prove jurisdiction by a preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B); *see also Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.").

"For a case to be brought originally in federal court under the relevant section of CAFA . . . it must have (1) more than $5,000,000 in controversy, exclusive of interest and costs; (2) at least one member of the plaintiffs' class who is a citizen of a state different than at least one of the defendants; and (3) 100 or more class members." *Krivonyak v. Fifth Third Bank*, No. 2:09-cv-00549, 2009 WL 2392092, at *3 (S.D. W. Va. Aug. 4, 2009) (citing 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B)).

There is no presumption against removal in CAFA cases. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitated adjudication of certain class actions in federal court."). If at any time prior

4

to final judgment, however, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## IV.   Discussion

The defendants have alleged minimal diversity of citizenship, an aggregate amount in controversy exceeding $5,000,000—exclusive of interest and costs—and a class size greater than 100 persons. *See* 28 U.S.C. § 1332(d). Crookshanks, however, challenges the defendants' jurisdictional allegations and asserts that this action does not satisfy the $5,000,000 amount in controversy requirement and falls within CAFA's local controversy exception. Mem. Supp. Mot. Remand 5, 8 [ECF No. 7] (citing 28 U.S.C. § 1332(d)(4)(A)). Because the plaintiffs' Motion may be decided on the amount in controversy issue, the court does not address the other challenges raised by the plaintiffs.

"The Class Action Fairness Act of 2005 . . . provides that the federal 'district courts shall have original jurisdiction' over a civil 'class action' if, among other things, the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013) (quoting 28 U.S.C. §§ 1332(d)(2), (d)(5)). "The statute adds that 'to determine whether the matter in controversy exceeds the sum or value of $5,000,000,' the 'claims of the individual class members shall be aggregated.'" *Id.* (quoting 28 U.S.C. § 1332(d)(6)). "In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination. . . . If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court

5

may dismiss only if 'it is apparent, *to a legal certainty,* that the plaintiff cannot recover the amount claimed.'" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). A different test applies in removal situations—such as the situation here—in which the plaintiff has made an unspecified demand for damages in state court. *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996). "A defendant that removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount." *Id.* (citing *Gaus v. Miles Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)).

The defendants argue that the amount in controversy is satisfied merely based on the prescribed minimum recovery amount established by the WVCCPA. Additionally, the defendants argue that the amounts collected from invoicing, when added to the claims for punitive damages, attorneys' fees, and the declaratory relief, satisfy the amount in controversy requirements.

## A.    WVCCPA Minimum Recovery

The defendants argue that they may easily satisfy the amount in controversy requirement under the WVCCPA. The defendants state that since June 6, 2014—the beginning of the defined timeframe in the Complaint—HealthPort responded to "over 35,000 requests for medical records by patients and patient representatives from

health care providers in West Virginia." Resp. 9 [ECF No. 11]. The defendants argue that, because recovery under the WVCCPA permits recovery of actual damages or $200, whichever is greater, they can demonstrate an amount in controversy of over $7,000,000 based on the minimum statutory damages alone.[2] *Id.*

The total number of medical record requests, however, does not assist the court with determining the amount in controversy. Because the definition of the putative class includes only those plaintiffs who *paid for* their medical records, the relevant consideration is the number of requests *paid for*, not the total number of requests. In other words, requests for which no money was paid are *not a part of this litigation*. At least 25,001 requests would need to be paid for to exceed the amount in controversy threshold.[3] The defendants have not provided the court with *any* evidence regarding the number of requests actually paid for. Instead, the defendants have provided evidence that from June 6, 2014, until mid-March 2016, HealthPort received $918,745 in payment after billing over $2,000,000.[4]

---

[2] The defendants appear to have multiplied the total number of requests by the minimum statutory relief to arrive at their $7,000,000 figure: 35,000 x $200 = $7,000,000. The plaintiffs also concede that the $200 minimum statutory recovery applies *per occurrence*. Reply 3 [ECF No. 13] ("Defendants correctly point out that each claimant in the putative class could recover $200 per occurrence under the WVCCPA.").

[3] 25,001 x $200 = 5,000,200

[4] The defendants refer to the amount collected as $1,500,000. This larger figure, however, includes money received *after* the Notice of Removal was filed, which was April 8, 2016. Abatjoglou Decl. ¶ 9 [ECF No. 11-1]. *Wickline v. Dutch Run-Mays Draft, LLC*, 606 F. Supp. 2d 633, 636 (S.D. W. Va. 2009) ("In Addressing the propriety of federal jurisdiction in a removal action, courts base their decision on the record existing at the time the petition for removal was filed." (quoting *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001) (Haden, C.J.))).

The defendants are the only parties as this stage of the proceedings with knowledge of the number of medical document requests made *and* paid for between June 6, 2014, and the date on which the Notice of Removal was filed. The defendants chose not to disclose the information, and the court will not assume that any particular percentage of the requests received resulted in payment. Accordingly, the court is not convinced that the defendants have met their burden of persuasion that the $5,000,000 amount in controversy is satisfied based purely on the WVCCPA's statutory minimum recovery structure.

## B.   Other Damages and Relief Sought

The defendants argue that the case satisfies the $5,000,000 amount in controversy requirement under the CAFA because the cumulative value of the case—considering the money actually collected by the defendants and the plaintiffs' demand for attorneys' fees, punitive damages, and a declaratory judgment—exceeds the required amount. To support its argument, the defendants show that HealthPort received $918,745 for servicing record requests. Abatjoglou Decl. ¶ 9. The defendants then stack the plaintiffs' potential avenues for relief on top of the amount collected from the defendants' invoices to assert that the amount in controversy is satisfied. The defendants do this by taking the amount collected and adding a one-third contingency fee for statutorily-authorized attorneys' fees, adding an unspecified amount to account for a potential declaratory judgment, and further adding the possibility of punitive damages.

### 1.   Attorneys' Fees

The defendants request the court apply a one-third contingency rate for attorneys' fees to the plaintiffs' potential recovery. "[T]he Fourth Circuit [has] held that when a statute (like the WVCCPA) provides for the recovery of attorneys' fees, they may be included in calculating the amount in controversy." *Caufield v. EMC Mortg. Corp*, 803 F. Supp. 2d 519, 529 (S.D. W. Va. 2011) (citing *Bartnikowski v. NVR, Inc.*, 707 Fed. App'x 730, 736 n.12 (4th Cir. 2009))). "The Fourth Circuit also stated in *Bartnikowski*, however, that estimation of attorneys' fees at an early stage of litigation amounted to pure speculation which 'cannot be used to augment the amount-in-controversy.'" *Id.* (quoting *Bartnikowski*, 707 Fed. App'x 730, 736 n.12).

The defendants have unequivocally failed to demonstrate that any attorneys' fees are even *likely* to be awarded in this case, let alone demonstrate what the award might be in light of West Virginia's substantive law on the issue. Accordingly, the defendants' arguments regarding attorneys' fees are pure speculation, and they will not be considered.

### 2.   Declaratory Judgement

The defendants argue that a declaratory judgment is akin to an injunction, and as such, any potential declaratory judgment relief should be considered in the amount-in-controversy determination. This argument is wholly meritless. *See Steffel v. Thompson*, 415 U.S. 452, 467 (1974) ("Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction."). A declaratory

judgment simply *declares* the rights and obligations of the parties, and the standards applicable to the proper issuance of a declaratory judgment are purposefully less rigorous than those standards applicable to injunctions, which *compel* certain actions or inactions. *Id.* at 471 ("[E]ngrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate.") The defendants have not cited to any case or statute that permits a plaintiff's demand for a declaratory judgment to be considered in the determination of whether the amount in controversy requirement under the CAFA is satisfied. The court is unpersuaded by the defendants' arguments on this point.

### 3.    Punitive Damages

The defendants' last effort to demonstrate that the amount in controversy is satisfied relies on the plaintiffs' request for punitive damages. Assuming, without deciding, that $918,745 is the proper measure of compensatory damages in this case, the defendants necessarily must demonstrate by a preponderance of the evidence that the remaining $4,081,255 needed to satisfy the CAFA's amount in controversy requirement is established by the plaintiffs' request for punitive damages. The defendants have not met their burden on this point.

10

The defendants argue that the mere fact that the plaintiffs are seeking punitive damages *at all* is enough to satisfy the court by a preponderance of the evidence that the amount in controversy is satisfied. This bald averment is simply not enough.

The defendants appear to improperly apply the so-called "legal certainty test" to the burden of proof they must satisfy in the removal context. *See* Resp. 11 (citing *Back Doctors, Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011)). Under the legal certainty test, "pleading damages in excess of the amount-in-controversy requirement in a complaint is sufficient to satisfy the jurisdictional requirement, unless it appears to a legal certainty that the plaintiff in good faith cannot claim that amount." 32A Am. Jur. 2d *Federal Courts* § 989 (1964). The legal certainty test does not, however, apply in a removal setting where, as in this case, the plaintiffs *did not specify* an amount of damages. "[I]n the removal context where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007) (discussing the burden of proof a defendant must satisfy in a removal action under the CAFA); *see also Landmark Corp.*, 945 F. Supp. at 936 ("[T]he 'legal certainty' test expressly applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court. A different test applies in removal situations like this one in which the plaintiff has made an unspecified demand for damages in state court.").

The defendants do not provide the court with facts regarding the potential for an award of punitive damages in this case. Instead, the defendants argue that "the possibility of the award must be considered." Resp. 11. Other courts have found such arguments to be insufficient. *See White v. Macy's Corp Serv., Inc.*, No. 5:16-cv-38, 2016 WL 2993195, at *3 (N.D. W. Va. May 23, 2016) ("Although [the defendants] ask the Court to rely on maximum multipliers affirmed in other cases, they have not established that punitive damages or attorney's fees are more likely than not even to be awarded, and, if so, for what possible amounts."); *Savarese v. Allstate Ins. Co.*, No. 5:06-cv-36, slip op. at 6 (N.D. W. Va. June 26, 2006) ("The mere likelihood of punitive damages, without more, does not give rise to federal jurisdiction.").

The defendants have not demonstrated by a preponderance of the evidence that the requisite amount in controversy is satisfied solely because the plaintiffs seek punitive damages and an award of punitive damages may be *possible*.

## V.     Conclusion

The court **FINDS** that the defendants, despite their tenacity and creativity, have simply failed to demonstrate by a preponderance of the evidence that the amount in controversy exceeds the $5,000,000 threshold established by the CAFA; thus, the court does not have diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). The plaintiffs' Motion for Remand [ECF No. 6] is **GRANTED**.

The court **REMANDS** this action to the Circuit Court of Kanawha County, West Virginia, and **DIRECTS** the Clerk to send a copy of this Order to counsel of

record and any unrepresented party, as well as a certified copy of this Order to the

Clerk of the Circuit Court of Kanawha County, West Virginia.


ENTER:      August 2, 2016


JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE